MOSELEY et al. v. BRADFORD et al.
(No. 8458.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 11, 1916. Rehearing Denied Dec. 16, 1916.)

1. HIGHWAYS ⊜⟶20 — ESTABLISHMENT BY STATUTORY PROCEEDINGS — PUBLIC NECESSITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6860, 6861, 6871, 6883, 6889, 6894, relating to the establishment of public roads by the commissioners' court, that court cannot lay out highways unless a public necessity therefor exists.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 26; Dec. Dig. ⊜⟶20.]

2. HIGHWAYS ⊜⟶64 — ESTABLISHMENT BY STATUTORY PROCEEDINGS — RESTRAINING OPENING OF ROAD.

While the commissioners' court has wide discretion in opening a public road, an abuse thereof may be enjoined, especially as Vernon's Sayles' Ann. Civ. St. 1914, art. 6882, confines the issues upon appeal to the amount of damages, leaving the only remedy that of injunction.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 165, 334; Dec. Dig. ⊜⟶64.]

3. EMINENT DOMAIN ⊜⟶198(1)—EVIDENCE—CONDEMNATION RECITALS.

Recitals as to necessity in condemnation proceedings to establish a public road do not controvert positive and uncontroverted testimony in a suit to enjoin establishment, because there was no public necessity for the road.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 531; Dec. Dig. ⊜⟶198(1).]

4. EMINENT DOMAIN ⊜⟶13—EXTENT OF POWER—TAKING PROPERTY FOR PRIVATE BENEFIT.

Taking private property for a highway for the benefit of an individual by a municipal body is a legal fraud upon the owner's rights, although there was no fraudulent intent in doing so.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53; Dec. Dig. ⊜⟶13.]

5. HIGHWAYS ⊜⟶55 — ESTABLISHMENT BY STATUTORY PROCEEDINGS — WAIVER OF DEFECTS.

Plaintiffs did not waive their right to enjoin the opening of a public road by presenting to the condemnation commissioners a claim for damages which reserved the right to contest such opening, especially where waiver was not pleaded.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 173–175; Dec. Dig. ⊜⟶55.]

6. HIGHWAYS ⊜⟶55 — ESTABLISHMENT BY STATUTORY PROCEEDINGS — PLEADING — WAIVER OF DEFECTS.

Waiver of the right to contest the opening of a road upon the ground of lack of public necessity is not available, unless pleaded.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 173–175; Dec. Dig. ⊜⟶55.]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Suit by Margaret C. Moseley and others against J. H. Bradford and others. From an order dissolving a temporary injunction, the plaintiffs appeal. Reversed and rendered.

W. H. Penix, of Mineral Wells, Hood & Shadle, of Weatherford, and D. M. Alexander, of Ft. Worth, for appellants. J. T. Ranspot and W. F. Smith, both of Palo Pinto, for appellees.

DUNKLIN, J. J. H. Bradford owns a survey of 160 acres of land situated in Palo Pinto county, which is wholly within and surrounded by a ranch, known as the Moseley ranch, of 3,000 acres. Mrs. Margaret C. Moseley owns a life estate in the land constituting the ranch, and the children of Mrs. Moseley and her husband, H. L. Moseley, own the fee-simple title in said ranch, subject to said life estate. On June 16, 1915, Mrs. Moseley and her husband filed this suit in the district court of Palo Pinto county against J. H. Bradford, the county judge, and other members of the commissioners' court, and the road overseer, to enjoin the opening of a public road of the second class, which had theretofore been established by said commissioners' court, extending from the home of said J. H. Bradford to a point on the Lipan public road, which had theretofore been ordered opened. At the same time they applied for and obtained a temporary writ of injunction, restraining any further action on the part of the defendant looking to the opening of the road. On June 29, 1915, the defendants filed a motion to dissolve the temporary writ, which was heard and granted on the 9th of July following. The plaintiffs gave notice of appeal from said order to this court, but they failed to take any further steps to prosecute said appeal. After such failure to prosecute the appeal, the commissioners' court ordered the road opened in compliance with their former orders, and the road was thereafter opened by the road overseer in compliance with the terms of said order. Thereafter, on October 6th, plaintiffs filed in the district court their first amended original petition, alleging that the action of the commissioners' court in opening the road was void, and asking that said court be enjoined from opening and maintaining the same, and that the fences erected to fence off the road from the balance of the Moseley ranch be removed. The case was tried without a jury, and the trial judge filed findings of fact and conclusions of law, which are as follows:

"Findings of Fact.

"The Allen Williams survey of land is owned by Mrs. Margaret C. Moseley, one of the plaintiffs herein, who has a life estate in said survey with the remainder in her children.

"(2) The J. W. F. Stone survey is owned by J. H. Bradford and is entirely surrounded by said Allen Williams survey.

"(3) J. H. Bradford has no road or outlet from his place except across the Allen Williams survey.

"(4) For years J. H. Bradford has had a gated road leading from his place to the old Lipan road, thence to his post office and trading point

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

at Brazos, Tex. This road has been moved by plaintiffs herein at will, and the location of same has never been certain or definite since the defendant J. H. Bradford has owned and occupied the said Stone survey.

"(5) On the 14th day of April, 1915, J. H. Bradford and others posted three notices, as required by law, stating that a petition would be presented to the commissioners' court of Palo Pinto county at its May term, 1915, asking for the opening and establishment of the road in controversy.

"(6) On the 9th day of May, 1915, J. H. Bradford filed with the clerk of the commissioners' court a petition in writing signed by himself and 44 others, freeholders of road precinct No. 14, of Palo Pinto county; that the said petition stated, among other things, that it was necessary for the convenience of the petitioners and the public generally that the road therein asked for be opened, same being the road in controversy.

"(7) On the 13th day of May, 1915, the commissioners' court of Palo Pinto county acted upon said petition, and found that a necessity existed for the opening of the said road, granted said petition, and appointed a jury of view to lay out the said road.

"(8) On the 25th day of May, 1915, an order for the jury of view to view out the said road and assess the damages incident thereto was duly issued by J. W. Brock, county clerk of Palo Pinto county, Tex., directed to J. E. Riggs, F. J. Kahlbau, Tom Harrison, L. M. Blucher, J. M. Watson, jury of view theretofore appointed by the said commissioners' court of Palo Pinto county, and that said order for the jury of view was on the 27th day of May, 1915, served upon each member of the said jury of view by W. G. Abernathy, sheriff of Palo Pinto county, Tex.

"(9) Thereafter said jury of view took the oath, as required by law, and thereafter gave notice to Mrs. Margaret C. Moseley and H. L. Moseley, her husband, of the time and place at which said jury of view would meet to lay out and survey said road and to assess damages thereto; said notice was served upon the said Mrs. Margaret C. Moseley and H. L. Moseley in Parker county on the 1st day of June, 1915, by Geo. Gore, sheriff of Parker county, Tex.; said notice was given for more than five days before the time set for the meeting of the said jury of view.

"(10) On the 10th day of June, 1915, the said jury of view met at the time and place mentioned in their notice to the plaintiffs and proceeded to lay out said road in compliance with the order of the commissioners' court and to assess damages to land taken from Mrs. Margaret C. Moseley for said road at the sum of $50 and other damages incident to the opening of the same at the sum of $10; and on the 14th day of June, 1915, filed with the clerk of the commissioners' court a report of their action.

"(11) On the 15th day of June, 1915, the commissioners of Palo Pinto county acted upon said report of the said jury of view, and ordered the said road opened and established as a road of the second class, 30 feet wide, and further ordered that the sum of $100 be deposited with the county treasurer of Palo Pinto county to the order of Mrs. Margaret C. Moseley as compensation for land taken, and ordered that J. H. Wharton, overseer of road precinct No. 14, open and fence said road.

"(12) When the said jury of view met to lay out the said road and to assess damages thereto the plaintiffs, H. L. Moseley and Mrs. Margaret C. Moseley, filed with the said jury of view a claim for damages for land taken in the sum of $100, and further incidental damages claimed in the sum of $500.

"(13) Said road is located as follows: Beginning at an iron stake 200 feet of the northwest corner of the J. W. F. Stone survey; thence in a northerly direction across the Allen Williams survey 1,700 feet to a stake at the crossing of a branch; thence in a westerly direction 436½ feet to a stake in the center of a gate near the residence of T. B. Roquemore and intersecting the old Lipan road at the said point; that the said road is now open and used by the public.

"Conclusions of Law.

"Upon the whole evidence and the foregoing findings of facts, I conclude as a matter of law:

"1. The commissioners' court of Palo Pinto county had the legal right to order the said road opened, and that the said court acted within its legal authority in opening the same.

"2. The petition of J. H. Bradford was in due and legal form; the same was signed by the requisite number of freeholders, and due notice of the presentation of the same had been given.

"3. All orders passed by the commissioners' court of Palo Pinto county in reference to the opening of the said road were in due and legal form and made in conformity with law.

"4. The jury of view were legally sworn and qualified, the notices given to the plaintiffs H. L. Moseley and Mrs. Margaret C. Moseley were in legal form, and the same were given for the length of time required by law.

"5. The plaintiffs, in appearing before the said jury of view and presenting a claim for damages, waived any and all irregularities, if any had existed, in the proceedings of the court up to the said time.

"6. The commissioners' court of Palo Pinto county had jurisdiction and full power to open said road and to make any and all orders necessary to be made in the opening of the same.

"7. The district court is without jurisdiction to inquire into any of the matters in controversy in this suit further than to ascertain that the commissioners' court did not abuse the right of discretion vested in it concerning the opening of public roads.

"8. The commissioners' court had jurisdiction of the entire subject-matter involved in this suit, and the said court has not abused its discretion, and therefore the plaintiffs are not entitled to the restraining order prayed for in their petition."

Plaintiffs alleged in their petition that the road was established for the sole benefit of J. H. Bradford, and not for the benefit of the public at large, and that therefore the action of the commissioners' court in establishing the road was void because it was an abuse of the discretion vested in said court by the statutes in the matter of laying out and opening public roads. And the contention pressed most strongly upon this appeal is that the truth of those allegations of fact was established by uncontroverted proof.

[1] It is hardly necessary to say that the power of the commissioners' court to lay out public roads did not exist except in cases of public necessity therefor, and that it did not have authority to lay out such roads for the sole purpose of benefiting Bradford only. See Vernon's Sayles' Texas Civil Statutes, arts. 6860, 6861, 6871, 6883, 6889, 6894; 15 Cyc. pp. 578, 579, 581 to 585; 10 R. C. L. §§ 22, 23, 28; 37 Cyc. 45 to 50. In Re Tuthill, 163 N. Y. 133, 57 N. E. 303, 49 L. R. A. 781, 79 Am. St. Rep. 574, the following language was used:

"Whether that is a public use, for which private property is authorized to be taken, will depend upon the object aimed at and whether the

plan has such an obvious, or recognized, character of public utility, as to justify the exercise of the right of eminent domain, or of the power of taxation, in its favor."

It is also true that the fact that some parties are more benefited than others by the use of the highway seems no objection thereto if the public interest and convenience are thereby subserved. Ross v. Davis, 97 Ind. 79; In re Burns, 155 N. Y. 23, 49 N. E. 246; G., H. & S. A. Ry. v. Baudat, 18 Tex. Civ. App. 595, 45 S. W. 939. In 37 Cyc. 47, it was said:

"It is not requisite, however, in order to justify the establishment of a highway, that it should both begin and end at pre-existing highways, or other public places, provided it is a public necessity, and if laid out will be a public utility and convenience. It is sufficient if one terminus be at an existing highway or other public place. Accordingly, a cul-de-sac may be established as a highway if public necessity, utility, or convenience requires. Under such circumstances the road when laid out need not be a thoroughfare."

To the same effect is Decker v. Menard County, 25 S. W. 727.

[2] It is well settled that, while the commissioners' court in opening a public road has a wide discretion in determining whether or not it is a public necessity, it may be enjoined from so doing upon a showing of an abuse of that discretion. Bourgeois v. Mills, 60 Tex. 76.

The statement of facts filed in the case shows that the documents referred to in the court's findings of fact were introduced in evidence such documents showing the proceedings taken for opening the road and consisting of the petition for the same, appointment of the jury of view, order approving their report, etc. Those instruments are not copied in the statement of facts, but they are attached to the plaintiffs' petition as exhibits, and presumably they are the ones considered by the court and referred to in his findings of fact.

Aside from those documents the only evidence introduced was the testimony of H. L. Moseley, one of the plaintiffs in the suit. He testified as follows:

"My coplaintiff Mrs. Margaret C. Moseley is my wife, and owns a life estate in two tracts of land, known as the Allen Williams survey, consisting of about 3,000 acres, and which property is known as the Moseley ranch, the title to said land being in our children named in the petition herein; that the defendant J. H. Bradford owns and occupies the J. W. Stone survey of 160 acres, which lies wholly within the inclosure of said Moseley ranch; that the road in controversy, the opening of which is sought to be enjoined in this suit, is a short road about one-third of a mile long, and extends from the yard of the residence of the defendant J. H. Bradford, on said J. W. F. Stone survey out through the said Moseley ranch to a public road, which runs along the west side of said Moseley ranch and is commonly called the Lipan road; the defendant J. H. Bradford has lived on said Stone survey, inside of the Moseley ranch, for a number of years, and always had free and easy access to his said land and home by a road, or several roads out through said ranch to said Lipan road, through a gate, or gates, in the outside fence of the said Moseley ranch, said road and roads being clear of any obstruction of any sort, except one gate; that the said J. H. Bradford had lived on said Stone survey for a number of years and used the roadway furnished him by the plaintiffs through the said Moseley ranch; that the road so furnished the defendant J. H. Bradford was the shortest and nearest way from the residence of the said Bradford to his post office, schoolhouse, gin, etc.

"That the petition for said road was signed by a number of citizens, who did not live near the said road, and who signed the petition for said road at the request of the defendant J. H. Bradford; that said road, as opened by the commissioners' court of Palo Pinto county, Tex., who are the other defendants herein, was opened as a second class road through the land in cultivation on plaintiffs' ranch and through growing crops on said land, and caused the plaintiffs very great inconvenience, as it cut their field in two with a lane and compelled the plaintiffs to open two gates in passing from one part of their field to the other part; that there was no necessity in his opinion for said road, as there was already a good road with a gate on it from the defendant Bradford's house out through plaintiff's land, which was easily accessible both for the plaintiffs and the general public.

"That when a matter of opening said road came up for consideration before the commissioners' court of Palo Pinto county, he went before said commissioners' court for the purpose of contesting the opening of said road, but that said commissioners' court declined to permit plaintiffs to produce any evidence as to the necessity of opening said road, or his damages sustained thereby, and declined to hear any evidence from the plaintiffs as to the opening of said road and the public necessity therefor.

"That the defendant J. H. Bradford told him that the reason that he wanted said road opened was because he thought it would add to the value of his place to have an open road from his front gate out to the public road; that he wanted to sell his place, and thought he could sell it easier with an opened lane than with a third-class road, and that he intended to get the road if the law would give it to him. 'I have been notified that Palo Pinto county has deposited with the county treasurer $100, payable to the order of my wife, Mrs. Margaret C. Moseley, in payment for damages and land taken. Money is no object with us; we do not want an open road through our land.'

"That there had been no trouble about the road in times past between plaintiffs and the defendant J. H. Bradford; that the said J. H. Bradford never made any complaint of any sort as to the road furnished him by plaintiffs as an outlet through said Moseley ranch over said Williams survey.

"That said road, as opened by the court, was solely for the benefit of the defendant J. H. Bradford, and only extended from Bradford's front gate out to said Lipan road, and is not used by the public for any purpose except to visit said Bradford.

"That the public in times past easily reached said Bradford's land by a road with a gate in it; that the effect of opening said road was to make plaintiffs open two gates instead of defendant Bradford having to open one, and caused plaintiffs very great inconvenience and trouble."

In McIntire v. Lucker, 77 Tex. 259, 13 S. W. 1027, it was held that a commissioners' court, at the instance of a property owner whose land was taken for a public road, could be enjoined from opening the road upon a showing that in the condemnation proceedings the statutory requirements for first giving notice to the owner before such con-

demnation was made were not complied with. After citing the statute requiring such notice to be given, the court said:

"The service of this notice in the manner required by this statute is indispensable to the exercise of jurisdiction by the commissioners' court. It is a jurisdictional fact which must be affirmatively shown to sustain the jurisdiction of the commissioners' court in making an order establishing and directing that a public road be opened on the land of a citizen. Without proper service of such notice the action of the jury of freeholders and the order of the commissioners' court are nullities."

To the same effect are Vogt v. Bexar Co., 5 Tex. Civ. App. 272, 23 S. W. 1044; Evans v. Santana Live Stock & Land Co., 81 Tex. 622, 17 S. W. 232; Morgan v. Oliver, 98 Tex. 218, 82 S. W. 1028, 4 Ann. Cas. 900; Crawford v. Frio County, 153 S. W. 388; Parker v. F. W. & D. C. Ry. Co., 84 Tex. 333, 19 S. W. 518. The case last cited was a suit by Parker against the railway company in trespass to try title to land which had theretofore been condemned for the use of the railway in a condemnation proceeding instituted in the county court, and the decree of condemnation was relied on by the railway company as a defense to the action to the extent of the right of way awarded. In the opinion rendered in that case the Supreme Court used the following language:

"Many objections were urged to the admission in evidence of the petition seeking condemnation of right of way, to the report of the commissioners, and to the decree of condemnation; but it is not necessary to notice more than two of them. It was urged that the decree was inadmissible, in the absence of evidence that notice had been given to owners as the law prescribes, and we are of opinion that this objection should have been sustained. The proceeding to condemn land for public use is special in its character, and its validity must depend upon a compliance with the law authorizing it. Nothing is to be presumed in favor of the power of such a special tribunal, and it is incumbent on one seeking to show right under its decree to show that the court had acquired jurisdiction to render it. Notice to the owner of the land sought to be condemned is necessary to jurisdiction, and this cannot be presumed from declarations contained in the report of the commissioners, nor from recitals in the decree of condemnation, but must be proved" (citing a number of authorities).

In 4 McQuillin, Municipal Corporations, § 2110, it was said:

"The prevailing rule is that public improvement proceedings and the recital of record relative thereto are usually conclusive as against collateral attack. But defects in such proceedings which go to the jurisdiction of municipal authorities may be attacked collaterally."

And in Welton v. Dickson, 38 Neb. 767, 57 N. W. 559, 22 L. R. A. 496, 41 Am. St. Rep. 771, it was held that an injunction will lie to restrain the taking of property for the benefit of an individual, and not for the benefit of the public.

It is also to be noted that by article 6882 of our statutes, the right of the owner to appeal from the decision of the commissioners' court in condemning his property for a public road is limited to a complaint that the damages allowed are not adequate, thus leaving the only remedy open to him for resisting the unauthorized taking of his property by the commissioners' court to a suit for injunctive relief in the district court, which was followed in the present suit.

The existence of a public necessity for a road being prerequisite to the authority of the commissioners' court to lay out and establish a public road is also a jurisdictional fact, and what is said with reference to the necessity of proof of another jurisdictional fact, to wit, the service of notice upon the owner of land, would apply here also.

[3] In those cases the burden of proving notice was placed upon the defendant. Even though it should be said that in the present case the plaintiff assumed the burden of proving that there was no public necessity for opening and establishing the road in controversy, he has discharged that burden by undisputed proof, which made out a prima facie case and also a prima facie showing that in establishing the road the commissioners' court were moved by a desire to confer a benefit upon Bradford only, and not by a purpose to benefit the public. As noted already, the testimony of plaintiff H. L. Moseley was not controverted at all. The defendants failed to introduce the commissioners, or Bradford, or any one else; and, as settled by the authorities noted, the recitals in the condemnation proceedings could not be considered as any evidence controverting Moseley's testimony. And in this connection it is to be noted, further, that no excuse is shown for making the proposed road a second class road, which could not be closed by gates, rather than a third class road which could have been so closed under article 6899 of the statutes, and which apparently would have furnished Bradford the same facilities of access to his land with the exception of the necessity of opening gates.

[4] The action of a municipal body in taking private property for the benefit of an individual only, under the guise of a benefit to the public, is held by the authorities to be a legal fraud upon the rights of the owner of the property taken, and upon that theory may be impeached and set aside, even though the officers who take it had no fraudulent intent in same. Kansas City v. Hyde, 196 Mo. 498, 96 S. W. 201, 78 L. R. A. (N. S.) 639, 113 Am. St. Rep. 766.

In the case of Huggins v. Hurt, 23 Tex. Civ. App. 404, 56 S. W. 944, the owner of land sought to enjoin the commissioners' court from opening a public road across the land. The chief complaint was the insufficiency of damages awarded for the land taken, and the contention that of the persons who signed the petition upon which the road was opened, not exceeding five were freeholders residing in the precinct through which the road was opened, while the statutes required that such

a petition should be signed by eight freeholders. In that case this court affirmed the judgment of the trial court, denying the prayer of complainant for an injunction restraining the commissioners from opening the road. That ruling was based upon the following grounds: First. That the right of appeal from the award of damages given by article 4693 (now 6882) of the Statutes was the only remedy for relief against an allowance of damages in an adequate amount. Second. That a petition to open a public road signed by freeholders was not a prerequisite to the authority of the commissioners to establish the road, but that they had that power, upon their own initiative, under the provisions of article 4671 (now 6860). Third. That the decision of the commissioners upon the qualifications of the petitioners was conclusive. And in connection with the latter holding the following was said:

"The inference therefrom is that the Legislature intended that the action of the commissioners' court as to the necessity of the road, its proper location, the form of the petition, the qualification of its signers, and all other issues save that relating to the damages, should be conclusive."

To a like effect are Howe v. Rose, 35 Tex. Civ. App. 328, 80 S. W. 1019; Allen v. Parker County, 23 Tex. Civ. App. 536, 57 S. W. 703. But no contention was made in any of those cases that there was no public necessity for opening the road nor that the commissioners' court had abused its discretion in ordering it opened nor in any other respect. In the absence of such an attack, what was said would be correct. The language quoted had reference alone to that condition of the record as is shown by the opinion of the same court in Allen v. Parker County, supra, wherein it was held that the action of the commissioners' court in establishing a public road will not be enjoined for mere irregularities in the proceedings, where such irregularities are not fatal to its jurisdiction to do so. None of those decisions is in conflict with our conclusions in the present suit.

[5, 6] Neither are plaintiffs precluded from a recovery herein upon the theory that, by appearing before the jury of view and presenting their claim for damages, they thereby waived their right to complain that the commissioners' court abused its discretion, and in so doing acted beyond the scope of its authority to open the road. True, the trial court held that by such acts "they waived any and all irregularities, if any had existed, in the proceedings of the court up to the said time." But the ground of objection that the court acted without lawful authority was not a mere irregularity in the proceeding, but went to the authority of the court to open the road at all. Furthermore, it appears that the claim for damages which was presented to the jury of view by the plaintiffs was in writing, and was made upon the following condition:

"Subject to our intention to contest in court the right of the commissioners' court of Palo Pinto county to open the proposed road through the Moseley ranch from the Jack Bradford place to the Roquemore place, and under protest we file with you the following written claim for damages in the event said road is ever opened."

Then follows the claim for damages referred to in the court's findings. Further still there was no plea of waiver filed by the defendants, based upon the fact that plaintiffs presented said claim, and it is well settled that, in the absence of a plea of waiver, the waiver cannot be given effect, even though it be proven without objection. Murchison v. Implement Co., 37 S. W. 605; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979; Moody v. Rowland, 100 Tex. 363, 99 S. W. 1112.

From the foregoing conclusions, it follows that the judgment of the trial court must be reversed, and judgment here rendered, granting plaintiffs the injunctive relief prayed for in their petition, and requiring the removal of the fences erected to fence off the road from the balance of plaintiffs' land, without the discussion of other assignments appearing in appellants' brief, the determination of which becomes unnecessary.

Reversed and rendered.